# EXHIBIT A

IN THE CIRCUIT COURT OF COOK COUNTY ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

| ANTOINETTE CALVERT | ) | 2014L005823 |
| --- | --- | --- |
| | ) | CALENDAR/ROOM H |
| | ) | TIME 00:00 |
| | ) | Premises Liability |
| Plaintiff, | ) | |
| | ) | No. |
| v. | ) | |
| | ) | |
| | ) | |
| OFFICE DEPOT, INC. | ) | |
| | ) | |
| Defendant | ) | |

FILED-3
2014 JUN -2 PM 1:15
DOROTHY BROWN
CLERK OF CIRCUIT COURT
LAW DIVISION

## COMPLAINT AT LAW

NOW COMES the Plaintiff ANTOINETTE CALVERT, by and through her attorneys, PHILLIPS LAW OFFICES, and complaining against the Defendant OFFICE DEPOT, INC., states as follows:

### Count I – Negligence

1. On and before February 6, 2013, OFFICE DEPOT, INC. was a corporation organized under the laws of Illinois and/or doing business in Cook County, Illinois.

2. On and before February 6, 2013, Defendant OFFICE DEPOT, INC. leased, owned, occupied, maintained, possessed, and/or controlled the premises located at or near 6 South State Street in Chicago, IL 60603.

3. On February 6, 2013 at 6 South State Street in Chicago, Illinois there was an Office Depot retail store which was open to the public (hereinafter "retail store").

4. On February 6, 2013 Plaintiff ANTOINETTE CALVERT was an invitee on the premises of 6 South State Street in Chicago, IL 60603.

1

5. On February 6, 2013, Plaintiff ANTOINETTE CALVERT was lawfully on the property of 6 South State Street in Chicago, IL 60603.

6. On February 6, 2013, there existed an escalator within the premises of 6 South State Street in Chicago, IL 60603 connecting the basement level to the main floor of the retail store (hereinafter "the escalator").

7. Under February 6, 2013, the escalator was a common carrier under the laws of Illinois.

8. On and before February 6, 2013 Defendant OFFICE DEPOT, INC. leased, owned, occupied, maintained, possessed, and/or controlled the use of the escalator.

9. On and before February 6, 2013 Defendant OFFICE DEPOT, INC. leased, owned, occupied, maintained, possessed, and/or controlled the use of the building operating the escalator as part of its business operation.

10. On and before February 6, 2013, the escalator was used by large numbers of persons of all ages and varying degrees of physical strength and activity.

11. On and before February 6, 2013, the escalator required routine inspection to ensure the safety of the premises.

12. On February 6, 2013, Plaintiff ANTOINETTE CALVERT was a passenger on the escalator.

13. On February 6, 2013 Plaintiff had the actual or implied consent of the Defendant to ride the escalator.

14. On February 6, 2013, while Plaintiff was traveling on the escalator during her ascent from the basement level to the main level of the retail store the escalator suddenly and unexpectedly jerked and came to a stop, causing her to fall and injure her body.

15. On February 6, 2013, an employee, agent, and/or apparent agent of OFFICE DEPOT, INC. manually caused the escalator to suddenly and unexpectedly jerk and then stop while Plaintiff was a passenger on the escalator during her ascent from the basement level to the main level of the retail store, causing Plaintiff to fall and injure her body.

16. In the alternative on February 6, 2013, a malfunction, defect or hazard in the escalator caused the escalator to suddenly and unexpectedly jerk and then stop during Plaintiff's ascent from the basement level to the main level of the retail store, causing Plaintiff to fall and injure her body.

17. The sudden and unexpected jerk and then stop of the escalator that occurred while Plaintiff was a passenger on the escalator was of such force and intensity that it caused Plaintiff to fall and injure her body.

18. On February 6, 2013, Defendant OFFICE DEPOT, INC. directly as a corporation, and/or through its employees, agents, and/or apparent agents, was under certain duties imposed by law.

19. On February 6, 2013, Defendant OFFICE DEPOT, INC. directly as a corporation, and/or through its employees, agents, and/or apparent agents, was under certain duties imposed by law to use the highest degree of care consistent with escalators used in the practical operation of its business as a common carrier by escalator.

20. Notwithstanding said duties Defendant OFFICE DEPOT, INC., acting through its employees, agents, and/or apparent agents, was guilty of one or more of the following negligent acts or omissions:

   a) Failing to keep the escalator in proper and safe condition when operating;
   b) Manually and without warning causing the escalator to suddenly jerk and then stop while carrying the Plaintiff;

c) Manually and without warning causing the escalator to suddenly jerk while carrying the Plaintiff;

d) Manually and without warning causing the escalator to suddenly stop while carrying the Plaintiff;

e) Failing to warn the Plaintiff of the dangerous condition(s) within the elevator when the Defendant knew or in the exercise of ordinary care should have known such warning was necessary to prevent injury to plaintiff and other invitees;

f) Failing to keep the escalator in proper repair;

g) Allowing the installation of an escalator that was unsafe or had a dangerous condition or dangerous conditions on it;

h) Failing to properly investigate and/or hire qualified competent contractors in the installation, maintenance, and/or use of the escalator;

i) Failing to properly supervise unknown contractors in the construction, maintenance, and/or use of the escalator;

j) Otherwise failing to maintain the premises so as to prevent an unreasonable risk of harm to the public and invitees.

21. That as a direct and proximate result of the negligence which occurred while the escalator was under the Defendant's control Plaintiff suffered permanent and severe injuries, which has caused Plaintiff to endure pain, suffering, disability, disfigurement, loss of a normal life, which requires her to seek medical care which continues in the future and to incur medical expenses.

### Count II – Premises Liability

1-14. Plaintiff realleges paragraphs 1 through 14 as though fully set forth herein.

15. On February 6, 2013, a malfunction, defect or hazard in the escalator caused the escalator to suddenly and unexpectedly jerk and then stop during Plaintiff's ascent from the basement level to the main level of the retail store, causing Plaintiff to fall and injure her body.

4

16. The sudden and unexpected jerk and then stop of the escalator that occurred while Plaintiff was a passenger on the escalator was of such force and intensity that it caused Plaintiff to fall and injure her body.

18. On February 6, 2013, Defendant OFFICE DEPOT, INC. directly as a corporation, and/or through its employees, agents, and/or apparent agents, was under certain duties imposed by law.

19. On February 6, 2013, Defendant OFFICE DEPOT, INC. directly as a corporation, and/or through its employees, agents, and/or apparent agents, was under certain duties imposed by law under 740 ILCS 1302/2 to use reasonable care under the circumstances regarding the state of the premises or acts done or omitted on them.

20. On February 6, 2013, Defendant OFFICE DEPOT, INC. directly as a corporation, and/or through its employees, agents, and/or apparent agents, was under certain duties imposed by law to use the highest degree of care consistent with escalators used in the practical operation of its business as a common carrier by escalator.

21. Notwithstanding said duties Defendant OFFICE DEPOT, INC., acting through its employees, agents, and/or apparent agents, was guilty of one or more of the following negligent acts or omissions:

    a) Failing to keep the escalator in proper and safe condition when operating;

    b) Failing to warn the Plaintiff of the dangerous condition(s) within the elevator when the Defendant knew or in the exercise of ordinary care should have known such warning was necessary to prevent injury to plaintiff and other invitees;

    c) Failing to keep the escalator in proper repair;

    d) Allowing the installation of an escalator that was unsafe or had a dangerous condition or dangerous conditions on it;

    e) Failing to properly investigate and/or hire qualified competent contractors in the installation, maintenance, and/or use of the escalator;

    f) Failing to properly supervise unknown contractors in the construction, maintenance, and/or use of the escalator;

    g) Otherwise failing to maintain the premises so as to prevent an unreasonable risk of harm to the public and invitees

22. On February 6, 2013 the escalator's sudden and unexpected jerking and then stopping while carrying one or more passengers posed an unreasonable risk of harm to people on the property, including the Plaintiff.

23. On February 6, 2013 Defendants knew or through the exercise of ordinary care should have discovered the hazardous condition of the escalator.

24. That as a direct and proximate result of the negligence which occurred while the escalator was under the Defendant's control Plaintiff suffered permanent and severe injuries, which has caused Plaintiff to endure pain, suffering, disability, disfigurement, loss of a normal life, which requires her to seek medical care which continues in the future and to incur medical expenses.

### Count III– Res Ipsa Loquitur

1-17. Plaintiff realleges paragraphs 1 through 17 as though fully set forth herein.

18. On February 6, 2013, Defendant OFFICE DEPOT, INC. directly as a corporation, and/or through its employees, agents, and/or apparent agents, was under certain duties imposed by law.

19. On February 6, 2013, Defendant OFFICE DEPOT, INC. directly as a corporation, and/or through its employees, agents, and/or apparent agents, was under certain duties imposed by law to use the highest degree of care consistent with escalators used in the practical operation of its business as a common carrier by escalator.

20. On February 6, 2013 Plaintiff ANTOINETTE CALVERT sustained injuries including but not limited to bilateral subdural hematomas.

21. That the above injuries occurred on February 6, 2013 while Plaintiff was traveling on the escalator during her ascent from the basement level to the main level of the Defendant retail store which was under Defendant's exclusive control.

22. That in the normal course of events ANTOINETTE CALVERT's injuries including but not limited to bilateral subdural hematomas would not have occurred if the Defendant had used reasonable care while the escalator was under Defendant's control.

23. That Plaintiff's injuries were not due to any voluntary act or negligence on the part of the Plaintiff.

24. That as a direct and proximate result of the negligence which occurred while the escalator was under the Defendant's control Plaintiff suffered permanent and severe injuries, which has caused Plaintiff to endure pain, suffering, disability, disfigurement, loss of a normal life, which requires her to seek medical care which continues in the future and to incur medical expenses.

Respectfully submitted,

*Elise Waisbren*
Attorneys for the Plaintiff

Terrence M. Quinn
Illinois Bar No. 6275734
Tquinn@phillipslegal.com
Elise A. Waisbren
Illinois Bar No. 6307256
Ewaisbren@phillipslegal.com
PHILLIPS LAW OFFICES
161 N. Clark Street, Suite 4925
Chicago, Illinois 60601
(312) 346-4262

# AFFIDAVIT OF DAMAGES

## SUPREME COURT RULE 222

The undersigned being first duly sworn upon oath, deposes and states that she is the attorney for the plaintiff in the above entitled cause of action seeking money damages or collection of taxes and states that this cause of action

☐ does not exceed $50,000.00

☒ does exceed $50,000.00

PHILLIPS LAW OFFICES

By: *[signature]*
Attorney for Plaintiff

Subscribed and Sworn to before me
this 30th day of May, 2014

*[signature]*
Notary Public

KELLY A. WILLOUGHBY
OFFICIAL SEAL
Notary Public - State of Illinois
My Commission Expires
March 06, 2018