UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| ANTOINETTE CALVERT, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 14-cv-6145 |
| OFFICE DEPOT, INC.; | ) | |
| THYSSENKRUPP ELEVATOR | ) | Judge John W. Darrah |
| CORPORATION; | ) | |
| THE SCHINDLER GROUP, LTD.; and | ) | |
| SCHINDLER ELEVATOR | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Antoinette Calvert filed a personal-injury action in the Circuit Court of Cook County, Illinois, on June 2, 2014, under theories of negligence, premises liability, and *res ipsa loquitur*, against Defendant Office Depot, Inc. (Dkt. No. 1, Ex. A.) In an underlying Complaint, Plaintiff alleges that she fell on the escalator at an Office Depot store located at or near 6 South State Street in Chicago. Plaintiff alleges that the escalator was in disrepair, not maintained in a proper or safe condition, and failed to comply with safety and maintenance requirements. Defendant Thyssenkrupp Elevator Corporation ("TKE") is an escalator maintenance company hired by Office Depot to service and maintain escalators in stores, including the subject elevator.

Office Depot removed the action to the Northern District of Illinois on August 11, 2014, pursuant to 28 U.S.C. § 1332(a), on the basis of complete diversity between the parties. (Dkt. No. 1.) Plaintiff subsequently filed her Second Amended Complaint on January 14, 2015, asserting additional claims against TKE, the Schindler Group, and

Schindler Elevator Corporation.  (Dkt. No. 30.)  On May 18, 2016, Office Depot filed cross-claims against TKE and the other Defendants.  (Dkt. 125.)  Office Depot and TKE have now filed Cross-Motions for Summary Judgment [151, 162] on Office Depot's Cross-Claim Count IV, which alleges breach of contract.

## LOCAL RULE 56.1

Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the party contends there is no genuine issue for trial."  *Ammons v. Aramark Uniform Servs.*, 368 F.3d 809, 817 (7th Cir. 2004).  Local Rule 56.1(b)(3) requires the nonmoving party to admit or deny every factual statement proffered by the moving party and to concisely designate any material facts that establish a genuine dispute for trial.  *See Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005).  A nonmovant's "mere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material."  *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003).  In the case of any disagreement, the nonmoving party must reference affidavits, parts of the record, and other materials that support his stance.  Local Rule 56.1(b)(3)(B).  To the extent that a response to a statement of material fact provides only extraneous or argumentative information, this response will not constitute a proper denial of the fact, and the fact is admitted.  *See Graziano v. Vill. of Oak Park*, 401 F. Supp. 2d 918, 936 (N.D. Ill. 2005).  Similarly, to the extent that a statement of fact contains a legal conclusion or otherwise unsupported statement, including a fact that relies upon inadmissible hearsay, such a fact is disregarded.  *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997).  Pursuant to Local Rule 56.1(b)(3)(C), the nonmovant may submit additional statements of material facts that "require the denial of summary judgment."

## BACKGROUND

The following facts are taken from the parties' statements of undisputed material facts submitted in accordance with Local Rule 56.1.

Defendant Office Depot is a Delaware corporation with its principal place of business in Boca Raton, Florida. (Office Depot Statement of Facts ("OSOF"), ¶ 2.) Defendant TKE is a Delaware corporation with its principal place of business in Georgia. (*Id.* ¶ 5.) Prior to the incident involving Plaintiff, Office Depot was a lessee of a portion of the premises located at 6 South State Street. (*Id.* ¶ 7.) Office Depot entered into a contract with TKE, entitled "Service Agreement." (*Id.*) The Service Agreement contains a provision relating to a "statement of work," under which TKE: "[A]grees to provide all services and equipment necessary to perform the work ('Services') as described in the statement of work substantially in the form of Exhibit A attached hereto ('SOW') as may be entered into between the parties from time to time for the compensation set forth therein. Each SOW shall incorporate the terms and conditions of this Agreement by reference." (*Id.* ¶ 8.)

Prior to Plaintiff's injury, Office Depot and TKE executed "Statement of Work #1" ("SOW #1"). (*Id.* ¶ 9.) SOW #1 provides that it "shall become part of the referenced [Service] Agreement between the parties." (*Id.* ¶ 10.) SOW #1 details TKE's responsibilities in providing maintenance coverage, including maintaining escalators, ensuring that the escalators are operating in a safe manner and within codes, and ensuring the escalators are fully operational at all times. (*Id.* ¶ 11.) The Service Agreement provided that TKE must maintain insurance as follows:

> **12. INSURANCE**
>
> **12.1** [TKE] shall maintain the following policies of insurance covering all Services furnished by [TKE] to Office Depot during the Term of this Agreement:

> a. Commercial General Liability (Bodily Injury and Property Damage) Insurance, in an amount not less than Two Million Dollars (2,000,000) per occurrence[.]
> *****
> [TKE] shall provide Office Depot with certificates of insurance for the coverages specified above which shall name Office Depot, Inc. as an additional insured, and shall be primary with respect to the coverage hereunder. The Additional Insured is defended and indemnified for actions arising from [TKE's] acts, actions, omissions or neglects; but is not defended for its own acts, actions, omissions, neglects, or bare allegations.

(TKE Statement of Facts ("TSOF"), ¶ 1) (emphasis in original). From October 1, 2012, until October 1, 2013, TKE was insured for general liability with Lexington Insurance Company ("Lexington") under policy numbers 037205277 and 037205276. (*Id.* ¶ 2.) Both policies contained a blanket additional-insured endorsement, which stated:

> It is hereby understood and agreed that Section II - Who Is an Insured - is amended by adding the following Part 4.
>
> > 4. Any person, firm, corporation or government body for whom the named insured is obligated by virtue of a written contract or agreement entered into with respect to the named insured's manufacture, sale, distribution, installation, service, repair or inspection of elevators and related devices, parts and components, to afford coverage such as is provided by this policy.
>
> The Coverage provided for any such additional insured is expressly limited to apply only to liability arising out of operations conducted by or for the named insured under the written contract or agreement and then only to the extent required by such written agreement. No coverage is provided for any additional insured for the liability which arises in any manner, directly or indirectly, other than from operations conducted by or for the named insured.

(*Id.* ¶ 5.)

Plaintiff alleges that she injured herself while on an escalator leased, owned, occupied, maintained, serviced, possessed and/or controlled by Defendants, including Office Depot and TKE. (OSOF, ¶ 14.) Office Depot alleges in Count IV of its Cross-Claims that TKE breached its contract with Office Depot to procure and maintain insurance. (*Id.* ¶ 18.) Office Depot

4

tendered this matter to TKE on at least two occasions. (*Id.* ¶ 19.) On June 24, 2016, AIG Claims, Inc. ("AIG"), the authorized representative of Lexington, responded to Office Depot's demands. (*Id.* ¶ 22.) AIG disclosed that the limits for one of the policies, 037205277, "have been fully eroded and exhausted by the payment of defense and/or indemnity for other claims" and that no coverage could be afforded under that policy. (*Id.* ¶ 23.) AIG also disclosed that, under policy 037205276, TKE had a $1,000,000 self-insured retention and that, therefore, Lexington had no duty to defend or indemnify until the $1,000,000 has been exhausted relative to Plaintiff's claim. (*Id.* ¶ 24.)

Office Depot asserts that TKE's alleged failure to procure and maintain a $2,000,000 primary insurance policy naming Office Depot as an additional insured was a breach of contract. (*Id.* ¶¶ 25-26.)

## LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. Courts deciding summary judgment motions must view facts "in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party has the initial burden of establishing that there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets this burden, "[t]he nonmoving party must point to specific facts showing that there is a genuine issue for trial." *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009). Factual disputes do "not preclude summary

judgment when the dispute does not involve a material fact." *Burton v. Downey*, 805 F.3d 776, 783 (7th Cir. 2015). The evidence must be such "that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson*, 477 U.S. at 248).

## ANALYSIS

Office Depot argues that TKE committed a breach of contract by failing to procure and maintain $2,000,000 in primary insurance naming Office Depot as an additional insured. For a breach of contract claim, Office Depot must show: "(1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of the contract by the defendant; and (4) resulting injury to the plaintiff." *Applied Indus. Materials Corp. v. Mallinckrodt, Inc.*, 102 F. Supp. 2d 934, 937 (N.D. Ill. 2000) (citing *Gallagher Corp. v. Russ*, 721 N.E.2d 605, 611 (Ill. App. Ct. 1999); *Elson v. State Farm Fire & Cas. Co.*, 691 N.E.2d 807, 811 (Ill. App. Ct. 1998)).

TKE responds that it has not breached the contract for several reasons: (1.) the Service Agreement does not require TKE to name Office Depot as an additional insured on an insurance policy but on a certificate of insurance; (2.) Lexington's additional-insured endorsement provides that Office Depot shall have whatever coverage TKE is obligated to provide to Office Depot; (3.) the Service Agreement excludes any obligation that the coverage for Office Depot is triggered by "bare allegations"; and (4.) because of the "bare allegation" exclusion, any hypothetical breach of the agreement resulting from the self-insured retention in the Lexington policy is immaterial as it cannot have caused damage to Office Depot.

*Insurance Policy vs. Certificate of Insurance*

The Service Agreement states that TKE must maintain certain insurance policies covering all services furnished by [TKE] to Office Depot, including a commercial general

6

liability policy, and that "[TKE] shall provide Office Depot with certificates of insurance for the coverages specified above which shall name Office Depot, Inc. as an additional insured, and shall be primary with respect to the coverage hereunder." TKE argues that this language does not require that Office Depot be listed as an additional insured on the insurance policy itself, but only on the certificate of coverage.

An insurance policy is a contract, and the rules of contract construction guide the interpretation of an insurance policy. *Founders Insurance Co. v. Munoz*, 930 N.E.2d 999, 1003 (Ill. 2010). A court's primary objective "is to ascertain and give effect to the intention of the parties, as expressed in the policy's language." *Id.* If the policy's language is unambiguous, provisions are applied as written, unless a provision breaches public policy. *Id.* at 1003-04. However, "[w]hen construing the language of an insurance policy, we must assume that every provision was intended to serve a purpose." *Id.* at 1004. An insurance policy must be considered as a whole. *Id.*

TKE's argument that the Service Agreement only demands that Office Depot be named on the certificate of insurance is belied by the next sentence of the agreement: "The Additional Insured is defended and indemnified for actions arising from [TKE's] acts, actions, omissions or neglects; but is not defended for its own acts, actions, omissions, neglects, or bare allegations."[1] If TKE was not required to name Office Depot as an additional insured on a policy, the requirement that the Additional Insured be defended and indemnified for TKE's acts, actions, omissions or neglects becomes pointless.

---

[1] Generally, "Illinois law draws a sharp distinction between a promise to indemnify a party and a promise to name a party as an additional insured." *Hartford Cas. Ins. Co. v. Bd. of Educ. of City of Chicago*, 813 F. Supp. 2d 942, 945 (N.D. Ill. 2011) (citing *Estate of Willis v. Kiferbaum Const. Corp.*, 830 N.E.2d 636, 644 (Ill. App. Ct. 2005)). However, when read in context, the Service Agreement requires TKE to add Office Depot as an additional insured who is then indemnified by that insurance policy.

7

The cases cited by TKE do not include the additional insured language. *See W. Bend Mut. Ins. Co. v. Athens Const. Co.*, 2015 IL App (1st) 140006, ¶ 20, 29 N.E.3d 636, 642, 644 (Ill. App. Ct. 2015) ("The Contractor shall purchase from and maintain . . . such insurance as will protect the Contractor from claims set forth below which may arise out of or result from the Contractors operations under the Contract and for which the Contractor may be legally liable. . . The following clause should be provided on the Subcontractor's Certificate of Insurance: *Athens Construction Co., Inc. Additional insured, on a primary and non-contributory basis*" (emphasis in original)); *see also Liberty Mut. Fire Ins. Co. v. St. Paul Fire & Marine Ins. Co.*, 842 N.E.2d 170, 175 (Ill. App. Ct. 2005) ("no Work of any kind is authorized nor shall any Work be begun under this Contract until the Contractor shall have provided and delivered to the Owner satisfactory and acceptable evidence of insurance"). In those cases, the language of the agreements clearly provided that the contractors and subcontractors purchase insurance for themselves and provide confirmation of that insurance. The contract language in *W. Bend Mut. Ins. Co.* further specifically stated that one party be listed on the certificate of insurance with certain language. *W. Bend Mut. Ins. Co.*, 2015 IL App (1st) 140006, ¶ 260, 29 N.E.3d at 644.

Here, the language of the Service Agreement required that TKE list Office Depot as an additional insured. As TKE states, a certificate of coverage does not confer rights upon the certificate holder and does not amend, extend or alter the coverage under the policies. *See Pekin Ins. Co. v. Illinois Cement Co., LLC*, 51 N.E.2d. 812, 815 (Ill. App. Ct. 2016). Holding that the Service Agreement only required TKE to list Office Depot on the certificate would make large portions of the agreement meaningless. Construing the agreement as a whole, TKE was required to list Office Depot as an additional insured on the commercial general liability policies.

*Additional Insured*

TKE also argues that, even if the Service Agreement required TKE to list Office Depot as an additional insured on the commercial general liability policies, Office Depot was covered by an Endorsement to the 037205276 insurance policy. Office Depot responds that, under a later Endorsement, the 037205276 policy was subject to a $1,000,000 self-insured retention. TKE admits that the Service Agreement required primary coverage and that the coverage was subject to the self-insured retention, which is not primary coverage.[2]

*Insurance Scope*

TKE claims that even if they had provided primary additional insured coverage for Office Depot, it would not have entitled Office Depot to a defense because the Calvert suit falls outside the scope of coverage that TKE was required to provide. TKE argues that Plaintiff's claims fall outside the scope of coverage because the Service Agreement excludes any obligation that the coverage for Office Depot is triggered by "bare allegations." In a rebuttal argument, TKE also asserts that any hypothetical breach of the Service Agreement resulting from the self-insured retention is immaterial as Plaintiff's claims are excluded from the scope of coverage.

TKE argues that they are not required to defend based on bare allegations because they are not an insurance company. *See Ervin v. Sears, Roebuck & Co.*, 469 N.E.2d 243, 249 (Ill. App. Ct. 1984) (". . . the law expressly prohibits those in the business of insurance from refusing to defend based on what they have discovered from "looking behind" the subject complaint, no such restriction is imposed on a business which, as part of its agreement with a purchaser of its products, agrees to defend and/or indemnify that customer in suits involving those products.").

---

[2] "TKE does not dispute that the contract required primary coverage, and that the coverage TKE provided was subject to a $1,000,000 SIR." (Dkt. 176, p. 4.)

When a duty to defend is present in a private indemnity agreement between noninsurers, the party providing the indemnity is allowed to look behind the allegations of third-party complaints "for the purpose of determining what its contractual obligations . . . in fact are." *Mallinckrodt*, 102 F. Supp. 2d at 942 (citing *Ervin*, 469 N.E.2d at 250). In *Mallinckrodt*, the court held that a defendant that has a contractual obligation to indemnify and/or defend can refuse to do so only when it has a good-faith basis to assert it will not be obligated to defend or indemnify a plaintiff. *Id.* at 944. However, in *Ervin*, the extent of that good-faith basis was whether the plaintiff in the personal-injury suit had been wearing clothing manufactured by the third-party defendant, "a factual issue that could not be determined simply by looking at the complaint." *Medline Indus., Inc. v. Ram Med., Inc.*, 892 F. Supp. 2d 957, 965 (N.D. Ill. 2012). "Nothing in *Ervin* indicates that the scope of the duty to defend must be determined based on evidence adduced during the course of the underlying trial." *Id.* at 965-66. Here, there is no dispute that TKE was responsible for servicing and maintaining the escalator in question. The claims have progressed beyond bare allegations. TKE has not demonstrated a good-faith basis for TKE to assert it is not obligated to defend Office Depot.

TKE failed to provide primary coverage under a general commercial liability policy for Office Depot in violation of the Service Agreement and SOW #1.

## CONCLUSION

Defendant Office Depot's Motion for Summary Judgment [151] is granted as to Cross-Claim Count IV. Defendant TKE's Motion for Summary Judgment [162] is denied as to Cross-Claim Count IV.

Date: _____February 28, 2017_____  /s/ _____
JOHN W. DARRAH
United States District Court Judge

10